Vedder Price (CA), LLP
Germain D. Labat, Bar No. 203907
glabat@vedderprice.com
Allison W. Meredith, Bar No. 281962
ameredith@vedderprice.com
1925 Century Park East, Suite 1900
Los Angeles, California 90067
T:  +1 (424) 204 7700
F:  +1 (424) 204 7702

Murphy & King, P.C.
Theodore J. Folkman (Pro Hac Vice
Application Pending)
TFolkman@murphyking.com
Peter C. Obersheimer (Pro Hac Vice
Application Pending)
PObersheimer@murphyking.com
One Beacon Street, 21st Floor
Boston, MA 02108
T: +1 (617) 423-0400
F: +1 (617) 423-0498

Attorneys for Applicants
PHILIP MORRIS PRODUCTS S.A. and
NICOCIGS LIMITED

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re APPLICATION OF PHILIP MORRIS PRODUCTS S.A. and NICOCIGS LIMITED TO ISSUANCE OF SUBPOENAS TO FONTEM HOLDINGS 1 B.V., FONTEM VENTURES B.V., NJOY, INC., and SPARK INDUSTRIES, LLC. | Case No. 2:16-MC-00005 **MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION OF PHILIP MORRIS PRODUCTS S.A. AND NICOCIGS LIMITED FOR ISSUANCE OF SUBPOENAS TO FONTEM HOLDINGS 1 B.V., FONTEM VENTURES B.V., NJOY, INC., AND SPARK INDUSTRIES, LLC** [Ex Parte Application of Philip Morris Products S.A. and Nicocigs Limited for Issuance of Subpoenas to Fontem Holdings 1 B.V., Fontem Ventures B.V., NJoy, Inc., and Spark Industries, LLC, filed concurrently herewith] |

1
2

## TABLE OF CONTENTS

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Background ........................................................................................................... 1

   A.  The Patent. ................................................................................................ 1

   B.  The Foreign Proceedings ......................................................................... 2

   C.  Information Relevant To The Validity Of The Patent. ........................... 4

   D.  Documents evidencing the prior art relevant to the Patent Disclosure In The EPO and the UK Proceedings ................................................................. 5

   E.  Other European Proceedings. ................................................................. 6

   F.  The Other Respondents to this Application. ........................................... 7

Argument ............................................................................................................. 9

   A.  The Section 1782 Statutory Requirements Are Met. ............................. 9

   B.  The Discretionary Factors Weigh In Favor Of The Application. ........ 11

Conclusion ......................................................................................................... 18

TABLE OF AUTHORITIES

Cases

*Akebia Therapeutics, Inc. v. Fibrogen, Inc.*
   793 F.3d 1108 (9th Cir. 2015) ...................................................................... 11, 14

*Automated Merch. Sys. Inc. v. Crane Co.*
   279 F.R.D. 366 (N.D. W. Va. 2011) .................................................................... 18

*Barnes & Noble, Inc. v. LSI Corp.*
   2012 WL 6697660 (N.D. Cal. 2012) .................................................................... 17

*Chevron Corp. v. Shefftz*
   754 F. Supp. 2d 254 (D. Mass. 2010) .................................................................. 12

*Consorcio Minero S.A. v. Doe Run Resources Corp.*
   2011 WL 4550200 (E.D. Mo. Sept. 30, 2011) .................................................... 13

*Continental Gas. Co. v. State of N.Y. Mortg. Agency*
   1994 WL 532271 (N.D. Ill. Sep. 26, 1994) ......................................................... 11

*Euromepa S.A. v. R. Esmerian, Inc.*
   51 F.3d 1095 (2d Cir. 1995) ................................................................................ 15

*Heraeus Kulzer, GmbH v. Biomet, Inc.*
   633 F.3d 591, 597 (7th Cir. 2011) ................................................................. 15, 18

*In re Application of Chevron Corp.*
   2010 WL 5173279 (E.D.Pa. 2010) ................................................................. 14, 15

*In re Application of Guy*
   2004 WL 1857580 (S.D.N.Y. Aug. 19, 2004) (United Kingdom) ................ 11, 15

*In re Application of Inversiones y Gasolinera Petroleos Venezuela, S. de R. L.*
   2011 WL 181311 (S.D. Fla. 2011) ...................................................................... 10

*In re Application of Procter & Gamble Co.*
   334 F. Supp. 2d 1112 (E.D. Wis. 2004) .............................................................. 13

*In re Application of Wilson & Partners, Ltd.*
   2007 WL 2221438 (D. Colo. Jul. 27, 2007) .................................................. 11, 15

VEDDER PRICE (CA) LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

MEMORANDUM IN SUPPORT OF EX
PARTE APPLICATION FOR SUBPOENAS

*In re Bayer AG*

    146 F.3d 188 (3d Cir. 1998) ...................................................................14

*In re Carsten Rehder Schiffsmakler und Reederei Gmbh & Co.*

    2008 WL 4642378 (M.D. Fla. Oct. 17, 2008)..........................................13

*In re Esses*

    101 F.3d 873 (2d Cir. 1996) ...................................................................15

*In re Godfrey*

    526 F. Supp. 2d 417(S.D.N.Y. 2007) ....................................................10

*In re IKB Deutsche Industriebank AG*

    2010 WL 1526070 (N.D. Ill. 2010) (United Kingdom) ................11, 14

*In re MSTG, Inc.*

    675 F.3d 1337 (Fed. Cir. 2012) .......................................................17, 18

*In re Servicio Pan Americano de Proteccion*, C.A.

    354 F. Supp. 2d 269 (S.D.N.Y. 2004) ...................................................13

*Int'l Shoe v. Washington*

    326 U.S. 310 (1945).................................................................................10

*Intel Corp. v. Advanced Micro Devices, Inc.*

    542 U.S. 241 (2004)...............................................9, 10, 11, 12, 15

*Matter of Leret*

    981 F. Supp. 2d 66 (D.D.C. 2013)..........................................................12

*Mees v. Buiter*

    793 F.3d 291 (2d Cir. 2015) ...................................................................15

*Small v. Nobel Biocare USA, LLC*

    808 F.Supp.2d 584 (S.D.N.Y. 2011) .....................................................18

*Weber v. Finker*

    2007 WL 4285362 (M.F. Fla. Nov. 30, 2007) ......................................19

Statutes

28 U.S.C. § 1782........................................1, 8, 9, 10, 11, 12, 13, 14

35 U.S.C. § 102 .................................................................................................... 3

35 U.S.C. § 103 .................................................................................................... 2

European Patent Convention, Article 54 ............................................................. 3

European Patent Convention, Article 56 ............................................................. 3

Fed. R. Civ. P. 26 .............................................................................................. 16

Patents Act 1977 ................................................................................................. 3

UK Patents Act 1977 ........................................................................................... 3

This is an *ex parte* application for an order under 28 U.S.C. § 1782(a) granting the applicants, Philip Morris Products S.A. ("PMPSA") and Nicocigs Limited ("Nicocigs") leave to serve subpoenas on Fontem Holdings 1 B.V. ("Fontem Holdings"), Fontem Ventures B.V. ("Fontem Ventures", and together with Fontem Holdings, "Fontem"), NJoy, Inc. ("NJoy") and Spark Industries, LLC ("Spark") to obtain documents for use in two pending foreign proceedings. The first pending proceeding is an opposition proceeding in the European Patent Office ("the EPO") seeking to invalidate Patent EP 2 022 349 ("EP 349," or "the Patent"), a patent relating to aerosol electronic cigarettes owned by Fontem Holdings. PMPSA is one of the parties seeking to invalidate the Patent in the EPO. The second pending proceeding is *Nicocigs Ltd. v. Fontem Holdings 1 BV and Fontem Ventures BV,* a suit pending in the United Kingdom for revocation of the Patent and for a declaration of non-infringement. PMPSA and Nicocigs (together, the "Applicants") are both affiliates of Philip Morris International, Inc. (together with its affiliates, "PMI") which sells tobacco and nicotine-containing products in 180 countries around the world. Wilson Dec.[1] ¶ 1.

As set forth in this memorandum, the Applicants have satisfied the statutory prerequisites for application of § 1782 and  the discretionary factors, including the specific factors prescribed by the Supreme Court, favor granting the application. The application is further supported by the accompanying Declaration of Alexander John Diebler Wilson. A proposed order is attached to the application as Exhibit 1. The proposed subpoenas are attached to the application as Exhibits 2, 3, 4 and 5.

BACKGROUND

A.    The Patent.

The electronic cigarette, or e-cigarette, is an increasingly popular device that

---

[1] The "Wilson Dec." is the Declaration of Alexander John Diebler Wilson in Support of this Ex Parte Application, which is filed concurrently.

typically uses an atomizer to produce a vapor/aerosol for inhalation. The user inhales vapor/aerosol instead of inhaling smoke produced by a combustible tobacco cigarette. PMPSA is engaged in the development of electronic cigarettes, and owns, or otherwise has the rights to, a portfolio of intellectual property rights relating to such products for sale by its affiliates throughout the world. Nicocigs is one of the largest participants in the UK electronic cigarette market, and is in the process of expanding into other markets within the European Union and the rest of the world. Wilson Dec. ¶ 7.

In 2007, Fontem Holdings' predecessor in title, Han Li[2] filed an application for the Patent, naming Mr. Han, who is understood to reside in China, as the inventor. Fontem accepts that the relevant date for determining the validity of the Patent is May 15, 2007—the date of the filing of the application. Fontem Holdings also acquired several US patents relating to e-cigarette technology, which it exclusively licensed to its affiliate, Fontem Ventures. *Id.* ¶ 8.

B.     The Foreign Proceedings.

Many of the participants in the American and European e-cigarette markets have been engaged in litigation in the United States and in Europe regarding the validity of the Patent and the related US patents. PMPSA opposed the patent in the EPO on April 30, 2015 ("the EPO Proceeding"). *Id.* ¶¶ 10, 17.   Nicocigs subsequently brought an action in the UK seeking to invalidate the Patent on June 1, 2015 ("the UK Proceeding"). *Id.* ¶ 9. At the highest level of generality, the Applicant claims in both proceedings that the supposed invention of the Patent was not novel and was obvious in light of what was generally known in the art at its filing date. *Id.* ¶ 18. In the United Kingdom and Europe generally, as in the United States, a patent is invalid if the claimed invention is obvious to one of ordinary skill in the art before the priority date, *see generally* 35 U.S.C. § 103; European Patent

---

[2] Mr. Han's name is sometimes also romanized as Hon Lik.

MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR SUBPOENAS

Convention, Article 56; UK Patents Act 1977, s. 3; or if the invention was described in a publication or already in public use or available to the public before the priority date, *see generally* 35 U.S.C. § 102(a); European Patent Convention, Article 54; Patents Act 1977, s. 2. Additionally, the Applicants allege that the Patent is invalid for insufficiency and added matter. *Id.* ¶ 18.

For its part, Fontem has brought infringement claims in Germany, the United Kingdom and the United States, including at least ten separate actions in this Court, against defendants involved in the sale of e-cigarette products. *Id.* ¶ 10. The US cases have been consolidated and are pending in this district; *Fontem Ventures, B.V. v. NJOY, Inc.,* No. 14-1645, is the lead case ("the US Proceeding"). *Id.* ¶¶ 10, 34. The US Proceeding involves, among other Fontem US patents, US Patent 8,365,742[3], which is related to the Patent at issue in the EPO and UK proceedings. These infringement claims are part of Fontem's efforts to monetize its patents and prevent competitors such as the Applicants from accessing markets in the United States, Europe and the rest of the world. By the same token, the actions the Applicants have brought before the EPO and in the UK, against Fontem, are motivated by their interests in preserving their freedom to operate and to compete freely in Europe and the rest of the world. *Id.* ¶ 12.

It appears from the docket in the US Proceeding that Fontem has settled several of the actions against alleged infringers (and the alleged infringers' counterclaims). *Id.* ¶ 12.  For example, docket entry numbers 395, 396, 401, and 403 all show dismissals of the claims with prejudice, in some cases with the Court retaining jurisdiction for the purpose of enforcing the settlement agreements. However, the settlement agreements themselves are not publicly available. In patent infringement and validity litigation, a settlement agreement generally contains a

---

[3] The other US patents Fontem alleges were infringed are: 8,375,957, 8,393,331, 8,490,628, 8,689,805, 8,863,752, 8,893,726, 8,899,239, and 8,910,641.

license to allow the alleged infringers freedom to operate in the future. In general, the settlement agreement also contains royalty payments in return for the license. *Id.* ¶¶ 12, 14, 45. According to press releases issued by the settling parties, Fontem's settlements with NJoy and others have involved the payment of an undisclosed sum as part of a royalty-bearing non-exclusive license of rights under the patents in suit. *Id.* ¶ 14.  As discussed below, the royalties negotiated between parties at arm's length in these settlement negotiations and the bases for the royalty calculations are relevant to damages questions that necessarily arise in litigation concerning infringement of the same patents involved in the settled cases, or related patents.

C.    Information Relevant To The Validity Of The Patent.

In order to prosecute their claims of invalidity in the EPO Proceeding and in the UK Proceeding, the Applicants are seeking discovery concerning the prior art and Mr. Han's work in the field of e-cigarettes. The Applicants understand that Mr. Han worked for a Chinese firm known as Ruyan during the time he was developing his invention. *Id.* ¶ 40.  In broad terms, the Applicants seek subpoenas to obtain documents that fall into the following categories (these are spelled out in more detail in the proposed subpoena):

1. Documents concerning the design or development of E-cigarette Products by or on behalf of, Ruyan or Han, or NJoy on or before December 31, 2008.

2. Documents containing communications dated on or before December 31, 2008 between Han, Ruyan, or NJoy on the one hand, and any other person on the other hand concerning the design of an E-cigarette Product.

3. Documents sufficient to identify all E-cigarette Products that were available to the public anywhere in the world on or before December 31, 2008, including but not limited to E-cigarette Products manufactured or offered for sale by NJoy or Ruyan.

4.  Documents concerning a market analysis or technical analysis of E-cigarette Products that were available for sale to the public anywhere in the world on or before December 31, 2008, including but not limited to E-cigarette Products manufactured or offered for sale by NJoy or Ruyan.

5.  Documents concerning attempts to reduce to practice the inventions claimed in the 349 Patent, the 349 Divisionals or the 742 Patent.

6.  Documents sufficient to identify all Prior Art asserted by any of the defendants in the US Actions.

7.  Documents concerning Prior Art [as defined in the Schedule A], whether or not asserted by any of the defendants in the US Actions.

8.  Transcripts of depositions of: Han, Gerald (Ged) Shudall, Hans Verleur and Josh Rabinowitz.

9.  All patent license agreements, agreements containing general or limited releases or covenants not to sue, or settlement agreements entered into between Fontem and any one or more of the defendants in the US Actions dated after March 5, 2014.

10. All documents concerning the proposed terms and negotiations of any of the agreements referred to in 9 above including any royalty calculations and the assumptions and bases for such calculations.

D.   Documents evidencing the prior art relevant to the Patent Disclosure In The EPO and the UK Proceedings.

The Applicants understand that in the US Proceeding, Fontem has produced documents potentially relevant to the invalidity issues now being determined in the EPO and the UK Proceeding. *Id.* ¶¶ 26, 40.  The documents produced were kept in two databases. The first was known as the "Relativity Database," because the database software used was kCura LLC's Relativity program, a widely-used e-discovery platform. The Applicants understand that the Relativity Database contains documents stored on Mr. Han's hard drives as well as documents obtained

MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR SUBPOENAS

from his colleagues at Ruyan relevant to his work. The second was known as the "Concordance Database," again after the software used, LexisNexis's Concordance program. The Applicants understood that this database included materials relevant to the US patent's file history, prior art introduced in the USPTO's *inter partes* review proceedings regarding that patent, market analysis and reports, assignment records, data room and closing documents, settlement agreements, documents produced by Ruyan in earlier litigation, presentations made to third parties about the Ruyan IP portfolio and the public Hong Kong stock exchange filings made by Dragonite. *Id.* ¶¶ 26-27.

The categories relating to the development and disclosure of e-cigarettes are potentially relevant to the issues of invalidity that are being considered in the EPO proceeding. Discovery is not available in the EPO.

Nicocigs sought categories of documents from Fontem in the UK Proceeding that differ significantly from the documents the Applicants seeks here, though there is some small degree of potential overlap. Fontem claimed that production of the requested documents would be overly costly and time-consuming. Nicocigs proposed, as a time- and cost-saving measure, production of the entirety of one of the databases (the documents in the databases would already have been produced in discovery in the US Proceeding, thus obviating the need for a privilege or relevance review). Fontem rejected this proposal, and in the end, the UK court refused to allow Nicocig's proposed discovery, pointing to what the judge found was the disproportionate cost in light of the relevance of the categories of documents sought in the UK Proceedings. *Id.* ¶¶ 28-30.

E.    Other European Proceedings.

While the Applicants rely on the EPO Proceeding and UK Proceeding in this application, the Court should have a complete picture of the litigation landscape in the industry-wide dispute about the validity of Fontem's patents. Fontem has brought at least three infringement proceedings against competitors of the

Applicants in the German courts. *Id.* ¶ 32. The products in issue in at least some of those proceedings are similar to those marketed by the Applicants. *Id.* EP 349 is in force in many other countries throughout Europe, including Austria, Belgium, Switzerland, the Czech Republic, Denmark, Finland, France, Hungary, Ireland, Italy, Montenegro, the Netherlands, Poland, Sweden, and Turkey. *Id.* ¶ 8.   The Applicants therefore reasonably expect that when they seek to launch such products in the German market and in other European markets, they will be sued by Fontem for infringement, as others have been. *Id.* ¶ 33.

F.     The Other Respondents to this Application.

NJoy and Spark are American companies engaged in the sale of e-cigarette products in the United States. Both are or were defendants in the patent infringement proceedings in this Court.  NJoy was one of the earliest companies to market e-cigarette products in the United States, and it has been active in the sector since at least 2007. *Id.* ¶ 14, 41. The CD Cal Proceedings were commenced in this Court by Fontem against NJoy as a claim for infringement of U.S. Patent Nos. 8,365,742, 8,375,957, 8,393,331, 8,490,628, 8,689,805, 8,863,752, 8,893,726, 8,899,239 and 8,910,641. *Id.* ¶ 34. In that proceeding, NJoy has pleaded that it conducts business within this District. (*See*, US Proceeding, Dkts. No. 1 ¶ 7; No. 15 ¶ 7).  In November 2015, Fontem and NJoy entered a global settlement ending the pending litigation between them, which includes the grant of a royalty bearing non-exclusive license to the patents-in-suit (and "certain other vapour technology related patents") from Fontem to NJoy.  Save for the foregoing, the settlement terms are confidential to the best of the Applicants' knowledge.  Wilson Dec. ¶ 14.

Fontem similarly launched an infringement action in this Court against Spark. Spark is a California limited liability company, and it has pleaded in the CD Cal Proceeding that its principal place of business is in Newbury Park, California. (*See Fontem v. Spark*, 2:14-cv-01653-GW-MRW, Dkt. Nos. 14 ¶ 7 (amended complaint); 16, ¶ 7 (answer).). The claims, against Spark, along with Fontem's

other suits in the CD Cal, were consolidated with the action against NJoy under Case No. 2:14–CV–1645 by order dated December 23, 2014 (Dkt. Entry No. 52). Fontem Ventures' action against Spark remains active, and upon information and belief, based on the Joint Stipulation and Application filed in the CD Cal Proceedings on December 10, 2015 (docket entry number 398), Fontem and Spark are in advanced negotiations to settle their dispute. Wilson Dec. ¶¶ 34, 36.

In sum, the Applicants seek the following information from the Respondents:

| Respondent | Involvement in CD Cal | Discovery Sought |
|---|---|---|
| Fontem | Filed at least 10 infringement proceedings in District. | • Documents showing the products purportedly invented by Mr. Han or others and the development of implementation of their designs; |
| NJoy | Conducts business within District. | • Documents concerning any e-cigarette-related patents on which Mr. Han is a named inventor; |
| Spark | Incorporated in California with principal place of business within District. | • Documents showing what e-cigarette products were on the market before December 2008; • Documents showing the products developed by or for NJoy or its assignors and the development and implementation of those designs; • Documents showing how Mr. Han and others attempted to reduce his purported inventions to practice; • The transcript of various depositions in the US Proceeding; • Settlement agreements between Fontem and accused infringers that contain licensing and royalty terms; and • Documents concerning the proposed terms of such settlement agreements. |

ARGUMENT

Section 1782 was enacted to provide a procedure pursuant to which parties such as the Applicants could obtain "federal court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Under the statute, the Applicants must make three showings: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made; (2) the discovery is for use in a foreign proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." *Id.* at 249. Once the Applicants show that these statutory prerequisites are met, the Court must consider four additional, discretionary factors: (1) whether the person from whom discovery is sought is a party in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign tribunal to federal-court assistance; (3) whether the request appears to be an attempt to circumvent foreign proof- gathering procedures of the foreign tribunal; and (4) whether the request is overly intrusive or burdensome. *Id.* at 265. Here, the Applicants have satisfied all of the statutory prerequisites, and the discretionary factors weigh in favor of the application.

A.    The Section 1782 Statutory Requirements Are Met.

The first statutory element requires that the discovery respondent be "found" or "reside" within the district. *See Intel,* 542 U.S. at 264. This requirement is "liberally interpreted". *See In re Application of Inversiones y Gasolinera Petroleos Venezuela, S. de R. L.*, 2011 WL 181311, at *8 (S.D. Fla. 2011). Business entities are "found" in the district where they are incorporated or headquartered, and where they are engage in systematic and continuous activity. *See, e.g., In re Godfrey*, 526 F. Supp. 2d 417, 422-23(S.D.N.Y. 2007); *see also In re Application of Inversiones y Gasolinera Petroleos Venezuela, S.e R. L.*, 2011 WL 181311, *8 (S.D. Fla. 2011)

(target that conducted systematic and continuous activities in the district is "found" in the district even if incorporated elsewhere). Here, all three of the discovery respondents reside or can be found within this District. Spark is a California limited liability company, and it has pleaded in the US Proceeding that its principal place of business is in Newbury Park, California. NJoy has pleaded in the US Proceeding that it conducts business within this District. (*See* US Proceeding, Dkts. No. 1 ¶ 7; No. 15 ¶ 7.) Fontem, while having its place of business in and existing under the laws of the Netherlands, has brought at least 10 court actions within this District. Wilson Dec. ¶ 10. Its decision to litigate so extensively here—to purposefully avail itself of the "benefits and protection of the laws of the state, including the right to resort to the courts for the enforcement of its rights," *Int'l Shoe v. Washington,* 326 U.S. 310, 320 (1945)—demonstrates that Fontem is present in this district and "found" here for purposes of § 1782. *See, e.g., Continental Gas. Co. v. State of N.Y. Mortg. Agency*, 1994 WL 532271, *7-9 (N.D. Ill. Sep. 26, 1994) (holding that involvement in 13 lawsuits in the state constituted purposeful availment, taking note in at least one of the cases, the party "is the plaintiff!").

The second statutory requirement of § 1782 is that the discovery must be sought for use in a "proceeding before a foreign or international tribunal." 28 U.S.C. § 1782 (a). Here, the requested discovery is for use in ongoing proceedings in the EPO and the United Kingdom.

The EPO and the courts of the United Kingdom are both foreign tribunals,[4] and U.S. courts have granted judicial assistance in aid of judicial proceedings in those forums in other cases. *See, e.g.*, *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1111 (9th Cir. 2015) (European Patent Office); *In re IKB Deutsche*

---

[4] Indeed, the case for treating the EPO as a foreign tribunal is stronger than was the case for treating the Directorate-General for Competition of the European Commission in *Intel*, since there the applicant seeking discovery under § 1782 was not a party to the European antitrust proceeding but merely the complainant, *Intel,* 542 U.S. at 246, whereas the EPO proceeding here is a true *inter partes* proceeding.

*Industriebank AG*, 2010 WL 1526070 (N.D. Ill. 2010) (United Kingdom); *In re Application of Wilson & Partners, Ltd.,* 2007 WL 2221438, at * 4-5 (D. Colo. Jul. 27, 2007) (United Kingdom); *In re Application of Guy,* 2004 WL 1857580, at *2-3 (S.D.N.Y. Aug. 19, 2004) (United Kingdom).

Third, the application must be made by an "interested person." *Intel* 542 U.S. at 264. Litigants in the foreign proceeding are "interested persons" for purposes of the statute. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004); *Matter of Leret*, 981 F. Supp. 2d 66, 69 (D.D.C. 2013). Nicocigs is the plaintiff in the United Kingdom proceeding, and PMPSA is party to the EPO proceeding, and therefore both are "interested persons" under the statute.

B.      The Discretionary Factors Weigh In Favor Of The Application.

Once the statutory requirements of § 1782 are met, as they are here, the Supreme Court prescribes four factors that courts should consider in weighing a § 1782 application: "(1) whether the person from whom discovery is sought is a party in the foreign proceeding; (2) the nature and character of the foreign tribunal and the receptivity of the foreign tribunal to U.S. federal-court judicial assistance; (3) whether the request appears to be an attempt to circumvent foreign proof-gathering procedures of the foreign tribunal and (4) whether the request is overly intrusive or burdensome." *Intel*, 542 U.S. at 264-265.

The first factor asks whether the discovery respondent is a party to the foreign case. If so, then the factor generally weighs against discovery. If not, then the factor weighs in favor of discovery. This factor weighs in favor of discovery from NJoy and Spark, since neither is a party to any of the foreign proceedings in question. *See, e.g., Chevron Corp. v. Shefftz*, 754 F. Supp. 2d 254, 261 (D. Mass. 2010).

Fontem is a party to both the EPO Proceeding and the UK Proceeding. However, its status in the foreign proceedings is not fatal to the application. Even where a discovery respondent is a party in the foreign proceeding, discovery under

§ 1782 is appropriate where, as here, participants in the foreign proceeding are unable to obtain the requested discovery in the foreign court or tribunal. *See Consorcio Minero S.A. v. Doe Run Resources Corp.*, 2011 WL 4550200, at *3 (E.D. Mo. Sept. 30, 2011) (permitting 1782 discovery as to participants in foreign proceedings where there was evidence "that the discovery may not be forthcoming in the Peruvian actions"); *In re Carsten Rehder Schiffsmakler und Reederei Gmbh & Co.*, 2008 WL 4642378 (M.D. Fla. Oct. 17, 2008) ("[W]hile [respondent] is a party to the foreign action … the evidence before the Court … suggests that … obtaining the information without this Court's assistance is by no means assured."); *In re Servicio Pan Americano de Proteccion*, *C.A.*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (while the party whose materials were sought was subject to Venezuelan jurisdiction, production of the necessary documents was likely unobtainable under Venezuelan law); *In re Application of Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1115 (E.D. Wis. 2004) (permitting 1782 discovery as to participants in foreign proceedings where obtaining discovery through foreign tribunals would be "inefficient and possibly ineffective").

The second discretionary factor asks whether, given the nature and character of the foreign proceedings and tribunal, it is appropriate for the Applicants to seek the requested discovery. Courts consider the nature of the foreign tribunal, the character of the proceedings, and the receptivity of the foreign country to court assistance from the U.S. This factor will weigh in favor of allowing discovery unless there is a clear directive from the foreign tribunal that it would reject evidence obtained in the U.S. *See, e.g.*, *In re Application of Chevron Corp.*, 2010 WL 5173279 (E.D.Pa. 2010); *see also In re Bayer AG*, 146 F.3d 188, 195-96 (3d Cir. 1998) (district court must consider whether foreign tribunal would take offense at courts allowing such discovery).

The EPO procedure does not provide for any means to compel a party to produce documents or a witness. Wilson Dec. ¶¶ 48-49. But as the Wilson

Declaration explains, the EPO is receptive to evidence obtained under § 1782. *Id.* ¶¶ 50-52.  Just this year, the Ninth Circuit affirmed a decision granting a § 1782 application for discovery in aid of an EPO proceeding, noting that the district court had "considered the nature of the foreign proceedings, the receptivity of the foreign government to discovery [and] the nature of the foreign proof-gathering restrictions[.]"*Akebia Therapeutics,* 793 F.3d at 1112.

As the Wilson Declaration explains, while English procedural law does enable limited disclosure of documents, the requests made here would not be granted by the English courts. *Id.* ¶ 54.  The UK courts, too, are receptive to evidence gathered in the U.S. *Id.* ¶¶ 55-57.  The reported cases on the receptivity of the UK courts support Wilson's Declaration. *See, e.g*., *In re IKB Deutsche Industriebank AG*, 2010 WL 1526070 (N.D. Ill. 2010) (in granting § 1782 application, noting, "[f]ederal district courts routinely allow applicants to obtain third-party discovery related to litigation pending in the United Kingdom"), citing *In re Application of Wilson & Partners, Ltd.,* 2007 WL 2221438, at * 4-5 (D. Colo. Jul. 27, 2007); *In re Application of Guy,* 2004 WL 1857580, at *2-3 (S.D.N.Y. Aug. 19, 2004).

The third discretionary factor asks whether the application is an attempt to circumvent the proof-gathering restrictions of the courts of the UK or of the EPO. *See Intel*, 542 U.S. at 244-45. The inquiry is whether the foreign court would be "affronted" by a party's recourse to US discovery. *See Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011). For this factor to weigh against granting the application, there must be "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *See In re Esses*, 101 F.3d 873, 876 (2d Cir. 1996), citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995); *see also In re Application of Chevron Corp.*, 2010 WL 5173279 (E.D.Pa. 2010) (this factor will weigh in favor of allowing discovery unless there is a clear directive from the foreign tribunal that it would

1   reject evidence obtained in the U.S.); *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir.
2   2015) ("the availability of the discovery in the foreign proceeding should not be
3   afforded undue weight."). The Wilson Declaration makes clear that neither the
4   applicable laws nor rules of court in the UK or the EPO forbid the use of the
5   relevant information the Applicants seek in this 1782 proceeding. Wilson Dec. ¶¶
6   50-51, 56.

7        While Nicocigs unsuccessfully sought disclosure in the UK Proceeding, and
8   there is a small degree of potential overlap between its present proposed subpoenas
9   and its request to the UK court, the Applicants' requests here are much narrower
10  and targeted. In the UK Proceeding, Nicocigs sought standard disclosure, that is,
11  broadly, documents on which Fontem relies, documents which adversely affect
12  either party's case and documents which support Fontem's case. The documents
13  were sought on the basis that they could provide documentary evidence of the
14  common general knowledge in the field and that they could shed light on the
15  development of a product described in an earlier patent of Mr. Han. To save time
16  and money, Nicocigs suggested production of the two databases that had been
17  assembled in the CD Cal. Proceeding in this Court. Fontem rejected this suggestion.
18  The Court concluded that the assistance which the documents would provide was
19  insufficient to justify the cost of the review of the databases for that material. *Id.*
20  ¶ 30.

21       In this application, the Applicants are seeking documents regarding
22  disclosures of e-cigarette products by Ruyan and NJoy and other documents
23  evidencing the development of e-cigarette products, documents confirming the
24  analysis of the e-cigarette products on the market, and documents relating to the
25  reduction to practice of the EP 349 invention. While there is a small degree of
26  overlap in relation to the request for documents concerning disclosure and
27  development of e-cigarette products to the extent that such products might be said
28  to be part of the common general knowledge (which was the subject on which

Nicocigs sought standard disclosure in the UK), the categories in the proposed subpoena are distinct and narrow. These categories could not be obtained from the UK court.

The subpoenas sought here are more narrowly drawn to call only for material that has clear relevance to the invalidity grounds at stake in the foreign proceedings. PMPSA has never sought discovery of this material in the EPO Proceeding. Moreover, the Applicants here are seeking discovery from NJoy and Spark—parties that were not before the UK court and from whom the Applicants have not previously sought discovery. And they are seeking discovery for use in proceedings that were not at issue in the UK court, namely the EPO Proceeding. For these reasons, the prior UK discovery decision is not a reason to deny discovery here.

As discussed in the Wilson Declaration, the royalty bearing licenses Fontem has granted in connection with its settlements in the CD Cal actions, and documents concerning the negotiations of those licenses, are relevant and likely admissible in the foreign proceedings. Nicocigs did not previously seek these licenses in the UK Proceeding. In many European jurisdictions, including the UK, comparator licenses are admissible and relevant to the question of the level of damages that would be payable if, contrary to the Applicant's position, their products were found to infringe the Patent. *Id.* ¶ 45.

There is no privilege shielding settlement agreements containing licensing terms from discovery.  For example, *In re MSTG, Inc.,* 675 F.3d 1337 (Fed. Cir. 2012), over the plaintiff's objection, the District Court ordered the plaintiff to produce information concerning licensing royalties contained in settlement agreements relating to the patent at issue in the subject case, and also to produce information about the negotiation of those agreements.  The Court found that the royalties negotiated as part of those settlements were relevant to the defendant's case on damages if it was found to have infringed. 675 F.3d at 1340. On appeal, the Federal Circuit affirmed the Order, holding there was no privilege protecting

settlement negotiations, and that it was permissible to allow discovery of the underlying negotiations even if the final, executed agreements had already been produced. *Id.* at 1348; see also *Barnes & Noble, Inc. v. LSI Corp.,* 2012 WL 6697660, *3-4 (N.D. Cal. 2012) (relying on *In re MSTG, Inc.*, requiring production of licensing agreements and drafts, and rejecting argument that party seeking this discovery must demonstrate a heightened showing of relevance); *Small v. Nobel Biocare USA, LLC*, 808 F.Supp.2d 584, 592 (S.D.N.Y. 2011) (holding that settlement agreement related to infringement action was discoverable as relevant to determining reasonable royalty for calculating damages in other action relating to same patent); *Automated Merch. Sys. Inc. v. Crane Co.*, 279 F.R.D. 366, 373-74 (N.D. W. Va. 2011) (documents related to licensing and settlement agreements were discoverable).

Finally, both tribunals have the ability to admit or refuse to admit evidence as they see fit. *See Heraeus Kulzer*, 633 F.3d at 597.

The fourth factor focuses on the issues of burdensomeness and reasonableness that are a part of all discovery practice in the federal courts. Under Rule 26(b)(1), "discovery is allowed regarding 'any matter relevant to the subject matter involved in the action,' as long as it is 'proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, the discovery requests are narrowly tailored and are not unduly intrusive or burdensome. In large part, the Applicants seek business records and communications that should be readily available to the discovery subjects, particularly because they have already been produced in the context of the ongoing litigation in this District.

The Applicants' request seeking discovery concerning the prior art, products

and concerning Mr. Han's work is not unreasonable. The categories of documents requested are narrowly tailored to get at documents that are likely to contain information highly material to the issues being litigated in the UK Proceeding and EPO Proceeding. Most of the information is maintained, at least for Fontem, in readily accessible e-discovery vendor databases hosted by Fontem's law firm and third party vendor. It bears noting that in the consideration of this factor, it is PMPSA and Nicocig's inability to obtain this discovery from Fontem in EPO proceedings and the UK Proceeding that prompted this Application. Even if respondents demonstrate that a certain request should be further tailored, this effort could be undertaken by the parties (and if necessary, the Court) and would not warrant denying the Application altogether. *See Weber v. Finker*, 2007 WL 4285362, *6 (M.F. Fla. Nov. 30, 2007) (while "the discovery requests may be overly broad and therefore, may need to be narrowly tailored ... Respondents have not convinced the Court the requests are so unduly intrusive or burdensome to deny the discovery altogether.").

In short, all of the relevant factors favor discovery.

VEDDER PRICE (CA) LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM IN SUPPORT OF EX
PARTE APPLICATION FOR SUBPOENAS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>CONCLUSION</u>

Because the statutory prerequisites have been satisfied and the discretionary factors weigh strongly in favor of discovery, the Applicants respectfully request that the Court grant this *ex parte* motion and authorize issuance of the subpoenas.


Dated:          January 21, 2016               VEDDER PRICE (CA), LLP


By: /s/ Germain D. Labat
     _____
     Germain D. Labat
     Allison W. Meredith
     Theodore J. Folkman (Pro Hac Vice
     Application Pending)
     Peter C. Obersheimer (Pro Hac Vice
     Application Pending)

     Attorneys for Applicants
     PHILIP MORRIS PRODUCTS S.A. and
     NICOCIGS LIMITED